UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BEAUVAIS and,
SIMONE BORAGGINA,

Plaintiffs,

v.

MICHAEL A. COX,

Defendant.
_____________________________/

Case No. 08-11881

Paul V. Gadola
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

## I. PROCEDURAL HISTORY

The present complaint was filed on May 2, 2008. (Dkt. 1). Defendant answered the complaint on May 27, 2008. (Dkt. 4). On June 16, 2008, defendant filed a motion to dismiss. (Dkt. 5). The motion was referred to the undersigned on June 24, 2008, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 6). Plaintiffs responded to the motion on July 7, 2008. (Dkt. 7). Defendant filed a reply brief on July 28, 2008. (Dkt. 10). A telephone hearing was held, as scheduled, on August 21, 2008. (Dkt. 9).

## II. STATEMENT OF FACTS

### A. Plaintiffs' Complaint

Plaintiffs' complaint alleges that they were the co-owners of Waiting Angels Adoption Services, Inc. (Waiting Angels), and that, on May 4, 2007, defendant, the Attorney General for the State of Michigan, announced to the media that he was bringing felony charges against plaintiffs relating to racketeering and tax fraud. (Dkt. 1, ¶¶ 8, 10). The complaint further alleges that defendant made statements, on May 4, 2008, and later, describing plaintiffs' operation of Waiting Angels as fraudulent, in several respects. (Dkt. 1, ¶¶ 11-17).

Plaintiffs' claim, in Count I, is that defendant's conduct violated their Fourteenth Amendment due process rights under the United States Constitution. (Dkt. 1, ¶ 33). According to plaintiffs, defendant's unconstitutional conduct was the publication of the allegedly untrue statements that defendant made about plaintiffs' operation of the Waiting Angels. (Dkt. 1, ¶¶ 22-27). As a result of defendant's conduct, plaintiffs claim that they suffered "a stigma to [their] reputation," "loss of employment and the closing of their Michigan corporation," "economic loss including ... economic damages and loss of career opportunities" and "emotional distress, humiliation, mortification and embarrassment, sleeplessness and anxiety, and other damages." (Dkt. 1, ¶¶ 34-37).

Plaintiffs also claim, in Count II, that their state constitutional due process rights were violated. This claim is predicated on the same facts and resulted in the same damages to plaintiffs as they allege in Count I. (Dkt. 1, ¶¶ 39-54). Plaintiffs seek to have the state law claim alleged in Count II considered by this Court under the supplemental jurisdiction rules that allow for such claims to be considered in federal court. The complaint requests declaratory relief as well as monetary damages. (Dkt. 1, p. 8).[1]

B. Defendant's Motion to Dismiss

Defendant raises a number of issues in his motion to dismiss, including his contentions that: (1) any claim against him in his official capacity is barred by the Eleventh Amendment;[2] (2) the Court should decline to award either declaratory or injunctive relief; (3) the Court should decline to exercise supplemental jurisdiction over the state law claims; (4) plaintiffs fail to state a federal due process claim; (5) plaintiffs have adequate post-deprivation remedies; (6) plaintiffs are estopped from asserting these claims under Michigan law due to the plea agreement in the

---

[1] Defendant's answer generally denies the allegations in the complaint and asserts various affirmative defenses. (Dkt. 4).

[2] During the oral argument on the motion, plaintiffs' counsel conceded that the Eleventh Amendment barred any claim against defendant in his official capacity.

criminal case; (7) plaintiffs fail to state a state due process claim; and (8) both the federal and state claims are barred by immunity. (Dkt. 5).

## III. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly*, 127 S.Ct. at 1964-65 (citations and quotation marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*, quoting, *Twombly*, at 1965 (internal citation and quotation marks

omitted); *see also* *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

*Twombly* also referred to "plausibility" as the measure of pleading sufficiency, stating that allegations must "nudge[ ] ... claims across the line from conceivable to plausible" to survive a motion to dismiss, but cautioned that it was not adopting or applying a "heightened pleading standard." *Id*. at 1974. As one district court recently observed, the "plausibility" standard has caused some confusion and uncertainty in the federal courts. *Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc*., 2008 WL 905354, *8 (S.D. Tex. 2008). The Third Circuit concluded that it is related to the requirement of a Rule 8 "showing," which only requires notice of a claim and its grounds, as opposed to a pleader's bare averment that he wants relief and is entitled to it. *Interspan*, at *8, citing, *Phillips v. Allegheny Co*., 515 F.3d 224, 234 (3d Cir. 2008) (internal citations and quotation marks omitted). "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element[]." *Phillips*, 515 F.3d 224 at 234. The Second Circuit has

summarized *Twombly* as endorsing "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Interspan*, at *8, quoting, *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007).

B. Fourteenth Amendment Due Process

The central issue in defendant's motion to dismiss is whether plaintiffs have stated an appropriate Fourteenth Amendment due process claim.[3] Because the remaining issues raised in defendant's motion essentially hinge on the due process claim, this issue will be addressed first. Plaintiffs' claim can fairly be summarized as follows: defendant, the Michigan Attorney General, made certain untrue statements about them in the course of issuing a press release regarding criminal charges against them arising from plaintiff's operation of a business known as the Waiting Angels Adoption Services. According to plaintiffs, these untrue statements caused their reputation to be stigmatized and they lost employment opportunities as well as suffered emotional harm. This, they say, violated their due process rights under the Fourteenth Amendment and defendant is liable to

[3] Plaintiffs do not indicate whether their claim is based on a theory of substantive or procedural due process. Defendant concluded that it must be based on procedural due process and plaintiff has not objected to that characterization.

them for these damages pursuant to 28 U.S.C. § 1983. Defendant, on the other hand, characterizes plaintiffs' claim as one for reputational damages, which, according to defendant, does not state a cause of action under the Fourteenth Amendment. Plaintiffs contend that their damages include not only the stigmatization resulting from defendant's statement, but also the loss of employment opportunities caused by that statement. This, plaintiffs argue, satisfies the so-called "stigma-plus" test and, therefore, they have stated a cause of action.

The Court's path of legal analysis begins with *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). In *Roth*, an assistant college professor had been hired for a single academic year, but was not rehired for the following year. The professor sued the college, claiming that he was denied rights under the Fourteenth Amendment because he was not provided with notice and hearing prior to the issuance of the decision to not rehire him. In examining the plaintiff's claim, the Supreme Court affirmed the constitutional concept that, before a person is deprived of a protected interest, they are entitled to the procedural due process right of notice and hearing under the Fourteenth Amendment. *Id.* at 570, n. 7. However, the Court also noted that "the range of interests protected by procedural due process is not infinite." *Id.* at 570. After examining previous decisions

involving welfare benefits and public employment, circumstances which involved a protected interest, the Court concluded that the plaintiff in *Roth* was not entitled, by law or contract, to continued employment with the university and, therefore, the plaintiff's "interest" in employment was not a "protected interest" under the Fourteenth Amendment.

The Court's next step along the path is *Paul v. Davis*, 424 U.S. 693 (1976). In *Paul v. Davis*, the plaintiff's name and picture appeared on a flyer bearing the caption "Active Shoplifters," which was distributed by police officers to businesses. The plaintiff had been arrested for shoplifting but was never convicted of the offense. The plaintiff sued, claiming that his Fourteenth Amendment right to due process were violated. The consequences of this constitutional violation, according to the plaintiff, included a stigma to his reputation, difficulty entering business establishments and the serious impairment of his future employment opportunities. *Id*. at 697.

In distinguishing common state-law tort claims from violations of the Fourteenth Amendment, the Court held reputational damage, by itself, was insufficient to establish a constitutional violation:

> The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and

> above interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

*Id*. at 701. After surveying a number of cases where governmental officials had characterized certain individuals in derogatory terms, the Court concluded that it had "never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment." *Id*. at 706. Thus, the Court held that a plaintiff must identify an interest that is recognized and protected under state law in order to invoke the procedural due process protections found in the Fourteenth Amendment:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Id*. at 710-11.

The Court also cited examples of interests that were found to fall within the scope of the Fourteenth Amendment's due process clause, including the right to operate a motor vehicle with a state-issued drivers license and the right to remain at liberty pursuant to a state-authorized parole program.[4] Ultimately, the Court concluded that, while the identification of the plaintiff as a potential shoplifter stigmatized the plaintiff and may have denied him some potential employment opportunities, this conduct did not "assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment." *Id*. at 712.

In the last step of its analytical journey, the Court rests on *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999). In *Cutshall*, the plaintiff challenged a Tennessee law governing the registration of sex offenders. Among other claims, the plaintiff contended that the law violated his Fourteenth Amendment due process rights because it stigmatized him and limited his right to future employment, without the opportunity for notice and hearing. The Sixth Circuit applied the "stigma-plus" test, which requires the plaintiff to show damage to a protected interest beyond merely damage to the plaintiff's reputation, in order to

---

[4] *Bell v. Burson*, 402 U.S. 535 (1971); *Morrissey v. Brewer*, 408 U.S. 471 (1972).

establish a procedural due process violation. *Id*. at 479. The *Cutshall* plaintiff claimed that his loss of employment opportunities resulting from his registration as a sex offender satisfied the "plus" requirement of the "stigma-plus" test. In analyzing this assertion, the Sixth Circuit concluded that no protected right to private employment has been recognized:

> Courts recognizing a constitutionally protected right to employment have done so in very limited circumstances and have dealt with terminations of government employment where either state law or an agreement between the parties purports to limit the ability of the government to terminate the employment. [Plaintiff] has not cited, and we have not found, any case recognizing a general right to private employment.

*Id*. at 479. Thus, the Sixth Circuit held that the plaintiff's generalized claim of potential loss of private employment did not satisfy the "plus" requirement of the "stigma-plus" test and the challenged state statute did not "implicate a constitutionally protected liberty or property interest in employment." *Id*. at 480.

The common principle taken from each case examined above is that reputational damage caused by state conduct does not, by itself, establish a violation of procedural due process rights under the Fourteenth Amendment. Reputational damage *plus* damage to some other constitutionally protected interest could result in a violation of procedural due process rights, however, state

conduct resulting in a person merely being less attractive to potential future employers does not implicate any constitutionally protected interest. Thus, in order to state a procedural due process claim, plaintiffs must identify a protected interest that they are entitled to by state law or agreement with the state.

The parties disagree about whether plaintiff has identified a protected interest sufficient to state a claim under the Fourteenth Amendment. Defendant asserts that plaintiffs' complaint does not state a proper cause of action because it does not allege that they suffered damages that satisfy the "stigma-plus" test. According to defendant, plaintiffs' claimed damages – the loss of their existing business and the difficulty finding future employment – are not protected interests. In response, plaintiff's claims that their loss of business and potential for difficulty with future employment are protected interests.

To support their position, plaintiffs rely on *Roth* and *Slocum v. Holton Bd. of Educ.*, 171 Mich.App. 92, 429 N.W.2d 607 (1988). The Court concludes, however, that neither of these cases suggest that plaintiffs have stated a cause of action under the Fourteenth Amendment. As set forth above, *Roth* involved a state employee who was not rehired following the termination of a fixed-term employment contract. The *Roth* plaintiff had no entitlement to state employment following the expiration of the employment contract and, therefore, he had no

protected interest implicating the Fourteenth Amendment. To the extent that *Roth* could possibly be interpreted to allow an inference that employment is a protected interest, plaintiffs have not identified a case that extends such an interpretation beyond public employment, which is obviously not a circumstance presented here.

*Slocum* is a case interpreting state law and does not serve as binding precedent in this Court. Even if the Court found *Slocum* to be appropriate persuasive authority, the opinion simply relies on *Paul v. Davis* for the proposition cited by plaintiff. As set forth above, the *Paul v. Davis* Court dismissed a claim where the plaintiff had pled reputational damage and possible difficulty finding future employment. The Supreme Court held that such claimed damages did not implicate a protected interest within the Fourteenth Amendment. The claims at issue in *Paul v. Davis* are remarkably similar to those at issue here, and thus, the Court concludes that *Paul v. Davis* does not support plaintiffs' federal constitutional claim.

In summary, to state a cognizable cause of action under the Fourteenth Amendment, plaintiffs must allege reputational damages *and* the loss of some right or benefit to which they are entitled under state law or a contract with the state. They have not done so and, therefore, they have failed to state a claim as

required by Rule 12(b)(6). Based on the foregoing, the undersigned recommends that defendant's motion to dismiss be granted.

C. State Constitutional Claims and Remaining Defenses

In light of the foregoing conclusion, the other issues raised in defendant's motion are easily resolved. First, the undersigned suggests that the District Court decline to exercise supplemental jurisdiction over plaintiff's state constitutional claims. *See, United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Second, as noted above, plaintiffs concede that their official capacity claims are improper. Third, based on the conclusions reached above, plaintiffs are not entitled to any relief on this complaint, including declaratory and injunctive relief. Fourth, given the undersigned's recommendations, it is unnecessary to reach the merits of defendant's other claims (1) that plaintiffs had an adequate post-deprivation remedy, (2) that plaintiffs' claims are estopped by their guilty plea, (3) that plaintiffs failed to state a state-law constitutional claim or (4) that plaintiffs' claims are barred by immunity.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that defendant's motion to dismiss be **GRANTED**; that plaintiff's federal claims be **DISMISSED** with prejudice; and that plaintiff's state law claims be **DISMISSED** without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the

objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

s/Michael Hluchaniuk
Date: September 4, 2008 Michael Hluchaniuk
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kenneth J. Hardin, II and Margaret A. Nelson. I also certify that I have mailed, by United States Postal Service, the foregoing paper to the following non-ECF participants: not applicable.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov